Court, David Jones, on behalf of Appellants Richard and Cheryl Klein. I think that I'd like to start with a general overview of the arguments, and then I'll field any questions. I'd like to reserve five minutes for rebuttal, please. I think that it's important in analyzing this appeal that the Court look to the applicability of Civil Code Section 846. I think that part of the problem in the analysis and shipment and the reliance that Appellees place in the Ornelas case is that there's no critical analysis of whether or not Section 846 applies. In the shipment case, they do analyze the cases from other jurisdictions, but what they don't do is they don't look at the language of the statute, and they don't engage as Avila did, the Avila case the California Supreme Court more recently decided, in a determination of whether or not that statute specifically applies to the conduct at issue. So it's one thing to assume that because it's a recreational user on the line of another that 846 would apply, but that's just relying on the public policy considerations, the general public policy considerations behind 846. If you read the statute, if you read the words of the statute, and you look at what it was designed to cover, it was designed to cover premises liability claims, conditions of the land, and it was designed to cover injuries that recreational users sustain to themselves on the land. It's not written, it's not drafted, and it's not intended, if you read the Court's decision in Avila, to cover ordinary negligence of a landowner injuring a third party. That's not what the language says. That's not what the California Supreme Court says in Avila. They interpret Civil Code Section 831.7, which is modeled after 846, and they do the analysis. They actually do the analysis. They look at the words of the statute, and they say, does it apply to this conduct? Does it apply? First, that's the first question. If it doesn't apply, then what we're faced with is a common law trespasser who's subject to an ordinary duty of care. And that's what I submit to the Court that we're dealing with here. If you take what Arnella says and what Shipman says, and you look at it, what they're doing is they're putting the cart before the horse. What they're saying is, is because they're a recreational user, therefore, there's no duty. But before we get to that, though, we have to look at whether or not 846 applies. And if you read the words of the statute, if you look at the legislative history, 846 shouldn't apply. There's an independent duty in the State of California under State and Federal law for any person using a vehicle to exercise ordinary care. We're on a paved road in a United States forest that invites the public to come. It's maintained by the United States. There are employees driving on that road and causes injury to a third party. That's not what 846 was designed to cover. 846 is a public policy statute that seeks to allow access for recreational users. And what it does is it protects landowners against claims that their property is in a dangerous condition, so the landowner doesn't have to take measures to make sure that it's in a perfect condition for people to come on the land. And it absolves those landowners of liability when that recreational user comes on the land and hurts themselves based on their own conduct. That's what it's designed to do. And to just blindly rely, as Shipman did, on the fact that, well, it's public policy that we want to allow these recreational users onto the land. Just to blindly rely on that without conducting a critical analysis of what the words of the statute say, I think, is unfair. And I think that... Here's my problem. Were this a Federal statute, and were the Shipman case coming out of another circuit, or were the Shipman case coming out of the district court? And therefore, were this court able simply to say what its understanding of the statute is? Your argument is much stronger to us. Our problem is, of course, as you know, I mean, this is a California statute, and this is a California Court of Appeal construing the statute in Shipman. Now, it's a recent case. It is, of course, a California Court of Appeal rather than a California Supreme Court. But we can't simply say, well, we think Shipman's wrong. We have to say, well, Shipman doesn't reflect the accurate construction of California law as the California courts would construe that law. And I think that in that regard, I think the court can, respectfully, because of Avala. Without Avala, Your Honor would be correct. Without Avala, I don't think we would be very specific. Avala says that 831.7 and 846 deal with the conditions of the property, that they are premises liability statutes only. That's what they are. They're not. They do that analysis. And specifically, that's the California Supreme Court telling us that if they were faced specifically with this set of facts, where you've got an activity, you've got the employer, someone in the course and that they would do that analysis, that they would look at it and say, does this statute apply to this conduct? Because that's what they did in Avala. That's specifically what they did. And they said it doesn't apply. For other reasons, they went on to find that there was no duty, but that's not the case here. In Avala, if you read Avala, that is a very recent California Supreme Court pronouncement about what they would do here. And what it specifically says is that 831.7 and 846 deal only with the conditions of the land. It doesn't deal with activities upon the land. And so if you're trying to counsel. Yes. Judge Boole with a question for you. At least as I understood your briefing, I thought you were saying that we have some good indications the California Supreme Court would not follow shipment. And so we could certify the question to them. And I understand that argument. And it seems sensible to me, subject to hearing the argument on the other side and my colleagues. But it sounded like you were arguing now that we could go ahead and just interpret the statute, you know, around the question of whether or not we would follow shipment without certifying it. Are you asking us to do that? Or are you just asking us to certify it? I think that both are good options, Your Honor. I would prefer that I would prefer, just because I think that it's before this panel, it's been briefed, and I think that it will be given the appropriate attention, that the Court look at it through Avala, because I think that what Avala does is it interprets 846. The California Supreme Court interprets Avala in Avala 846, therefore giving guidance to this Court to say that's what we will do. So, again, I think that both options are appropriate. I do. But I would prefer that this Court decide it, because I think that it has what it needs through Avala to make that determination. Does Avala comment specifically on shipment? It does not, Your Honor. It does not. It talks about the legislative history of 846, and it doesn't make that specific comment. So it doesn't, it's not critical of shipment, and it doesn't comment on shipment. Okay. Well, let me give you a couple of hypotheticals, just so I understand your position. One is, let's assume that a federal government maintenance worker was supposed to fix the pothole, and they negligently repaired it. And someone on a bicycle, you know, hits the pothole and falls. Now, would 846 immunize that negligent repair? Your Honor, the question to that is, it depends. It depends on whether or not the appellant could establish at the trial court level whether or not there was willful or malicious failure to do so. If it's pure negligence, if that's what Your Honor is suggesting, then it probably would. If there was notice of that pothole, if there were prior accidents at that pothole, and it was negligently repaired with the knowledge that it should have been repaired another way, then perhaps the appellant or a plaintiff below could establish that an exception applied. But yes, if it's simple negligence, yes, 846 would immunize. Second hypothetical is, assume that a federal police officer or, you know, a National Park police unit stops a bicyclist and uses excessive force. Of some kind. But would 846 immunize that? Under, I mean, under my analysis, under my analysis in this case, I don't believe that it would because I don't believe that the words of the statute, you know, provide that that type of conduct would be covered. And that's also because there's an independent duty not to use excessive force. In the same way you argue there's such a duty not to drive recklessly. Exactly. Yes. Yes, exactly, Your Honor. Okay, thanks. Is there the remainder of my argument for rebuttal? Okay, thank you. Let's hear from State. Or rather, I'm sorry, from the United States Government arguing about the State statute. Yes, sir. Let me begin, if I might. Well, first of all, let me introduce myself. My name is Julie Zatz. And I do represent the United States in this matter. And let me begin by trying to respond to Judge Gould's hypotheticals as well as to your comments, Judge Fletcher. Beginning with you, Judge Fletcher, the Shipman case does represent the State of California law presently, contrary to my opponent's claim. And the reason is that it is consistent with the Arnalis decision, which describes the recreational use statute as being extremely broad, requiring only that the defendant be a landowner and that the injured party have entered land for the purpose of recreating, and neither is in dispute here. And secondly, the decision, which has been occupying a great deal of counsel's discussion, is completely inopposite, and it is inopposite for the following reasons. While it does indicate in dicta that the recreational use statute, 846, was the basis for the governmental code 831.7, and while it states, and the government can see, that both do deal with premises liability, nothing in AVIA, contrary to counsel's representation, suggests that 846 is only a premises liability statute. It is not. Obviously, it is in part a premises liability statute.  You want me to interrupt you for a minute? Yes, sir. Because I believe in looking at the statute, and it says an owner has no duty of care to keep the premises safe. Aren't those the operative words? To me, Your Honor, yes, they are operative words, and to me, that's the decisive words. They are words which are the decisive words. Are there any other words that create immunity? The statute. No, I mean, are there any other words besides those? In the statute. In the text? No. All right. So a plain reading of the statute says it's a premises liability statute. Your Honor, yes, Your Honor. But courts, as you know, are in part here to interpret statutes, and the interpretation by the California Supreme Court in dicta, in a via, indicates that while it is a premises statute, that is not its only purpose. And the Court explicitly says that it is not going to go on to address the other purposes that the statute might serve. I've got a via here in front of me. Yes, sir. Could you point me to the language where Justice Werdegar says I'm not going to limit it to a premises liability statute? That's what I understood you to say, that the Court says in that case. Yes. Excuse me. I hate this little clock ticking away right next to me here. Oh, don't be nervous. It's okay. We'll make sure you've got enough time for your writing. Thank you, sir. Sometimes it's a good idea, if you intend to rely on something in a case, to put a little tab. Your Honor, on page — let's see, this is printed off of Westfall. It would be page 11 off of Westfall, but it would be at page 307 or 390 of the decision, depending on whether or not you're using the California statute. Could you speak a little louder? I can't hear you. Certainly. I was simply citing to the page numbers. Okay. Okay. So it would be 41, Cal Reporter 307, or 131 Pacific 3rd, 390. The Court states, but as in Acosta, it's a discussion of another opinion, we need not decide whether the immunity created by Section 831.7 extends only to premises liability claims. And that comes in the context of describing 831.7 as being modeled on 846. And that is the basis for my statement. But I would repeat, Your Honor, that whole discussion is dicta because the AVIA case, the issue in AVIA, the issues in AVIA were, first of all, whether the violation of a rule of a sport constituted a basis for liability such that the Assumption of Risk Doctrine would not apply, whether an extracurricular sport could be classified as a recreational activity within the meaning of the government code, and whether that government code released government entities, in this case a school, of a duty to supervise the extracurricular sport. It was not a statute designed even to apply to the United States, because as this Court well knows, the United States is subject to private person liability. And finally, the plaintiff in AVIA was an invitee. He is not an invitee in this case. And the plaintiff does not allege and, in fact, explicitly states he's not an invitee. But, Your Honor, let me come to the chase here, and this will address your question with respect to certification, Judge Gould. Defendant's employee was not acting within the course and scope of his employment. And therefore, under the Federal TORC Claims Act, the United States cannot be held liable for the negligence of the driver. The evidence and the record. But my understanding is that the court below decided this issue on the assumption that we haven't got to that question yet. I mean, you may want to argue that question, but that was not the basis for the decision  The court below either, I hate to use the word erred, but erred in the reading of the record, or in a desire to make its ruling as expansive as possible in order to give plaintiff every chance to prove it, made that assumption. But I can point you to the record, Your Honor, to several places, most particularly to tab 7, pages 2 and 3, where a plaintiff in his opposition and presentation of his facts and conclusions of law explicitly stated that he did not allege any willful or malicious conduct against the United States, and moreover, that the plaintiff was not an invitee. And in his complaint, he alleged variously that the driver was both within and without course and scope. The United States, in its motion and in its denial letter of the Act claim and its answer, explicitly stated that the driver was not within the course and scope of his employment, and plaintiff, although he had the opportunity to challenge, did not do so, nor did the driver. And perhaps the best evidence is, upon dismissal of the United States, plaintiffs sued the driver in State court, and I think this Court is entitled to draw an inference from the fact that prior to trial, the plaintiff was dismissed. I have to say, if I had been dismissed out of this one, in this case, on this ground, I would have sued in State court, too. I mean, the statute of limitations is going to run. What are you supposed to do? You better sue. But let me come back to the point that I think is right. I think I'm correct in saying that the district court did not decide whether or not this volunteer was acting within the course of employment, such as to potentially subject the United States to liability. Is that correct? The district court did not. It did not base its ruling on that, but you, of course, can review the record and make your own determination. Well, maybe. That is to say, there may be more facts that are needed. If the district court is going to decide that question, it may decide, you know, I need more briefing on that question, I may need more facts on that question. Our ordinary custom is to let the district court have the first crack at various decisions. Well, Your Honor, with all due respect, that is a determination that resides with the Department of Justice, the United States Attorney, and plaintiff, in the Meridian Logistics case of some years passing, has the opportunity to ask for an evidentiary hearing, and the court can provide one on that subject matter, and never did so. Well, now, why would he ask for it when the district court assumes it his way? No, I'm sorry. I'm sorry, Your Honor. I meant at the time of the certification, if the plaintiff disagrees with the construction, he can certainly ask for it. And he had every indication that the United States intended to proceed on the basis of responding that the employee was not within course and scope because it put it in its answer, it put it in its motion. The time for the challenge was at the time of the certification. I'm trying to ask you, why would he do that when the district court assumes in its favor? United States – excuse me, Your Honor. The time for the challenge would have been prior to the decision ever being rendered. Why – why – why would he do that if he thinks the district court is going to act in his favor? I just don't understand it. Perhaps I'm not being clear. Let me try again. At the time that the United States answers and an individual employee is named, it has the choice of either substituting the United States as a sole defendant if the employee is an employee within course and scope or not. That is made clear in the answer. At that time, the plaintiff, if he hasn't been put on notice as this one was much earlier, is informed of the fact that he cannot proceed against the United States on his theories with respect to negligent driving, and therefore may choose, because the United States has a deeper pocket than the plaintiff or because the fact suggests that it should be done that way, may choose to challenge the scoping before you ever get to the point of motions or discovery or whatever. I acknowledge that the decision of the court in this case did make the assumption that for purposes of the motion only, which suggests that the United States had taken that contrary position, that the driver was acting within course and scope. I bring that up because Judge Gould earlier said, why don't we certify the case to the State Supreme Court? Well, if we certify it, it would be to certify the question on the assumption made by the district court whose opinion we're reviewing. And I'm suggesting to you that to certify a case, there needs to be some sort of conflict or close question between the courts of California. There is not here because a via is an apposite, and all those other out-of-State decisions can be distinguished on their facts and on the law.  And in as much as, as a matter of law, the employee was not within the course and scope of his employment, it will not resolve the question. Well, that's what you said. I think the standard, I think, counsel, the standard is we have to be able to say it may be dispositive, and certainly it may be dispositive of the issue that we're reviewing on the district court's assumption. Well, Your Honor. Do you have any precedent, any federal court precedent that says the failure of the plaintiff to make the administrative challenge on the scope, on whether the driver was acting in the scope of his employment precludes him from making that challenge in the federal court? In as much as it is an issue of subject matter jurisdiction which cannot be waived, I imagine the implication is that it could not be waived by either party. However, Your Honor, Judge Fletcher, it's not a statement that I'm just making. It is a statement pursuant to the certification of the United States Department of Justice that the plaintiff failed to challenge and is no basis in this record for such a challenge. As I indicated before, plaintiff has proceeded against the driver in State court, and you responded to my point. There has been no lien placed upon the case by the insurance company. There is no claim by the driver that, no, I was within course and scope and I challenged the certification, so we have no challenge by the driver, no challenge by the plaintiff. And plaintiff, at an evidentiary hearing pursuant to Meridian, would have to present facts to indicate that there was some basis for believing that the government's failure to certify was correct. With all due respect, this Court cannot do that. This is all very interesting, and I would feel much more comfortable about agreeing with you if the district court had even begun to address this question, but the district court has not. The district court has made no conclusion whatsoever about whether or not the ability to challenge your assertion that he's not acting within the scope of the employment is somehow waived, not properly challenged. The district court has said nothing about this. But you don't even need to go to that point, Your Honor, to look and see that a via does not apply, it or analysis does. That's a different question. Indeed. That question goes to whether or not we should certify. That is to say whether there is some ambiguity in the law of the State of California. Yes, sir. It does. Yeah. Okay. I'm still asking if you have a precedent that says the failure to make this challenge to the lack of certification that the driver was in the scope of employment means that the plaintiff can't assert that in his complaint. As I stand here today, Your Honor, I do not have such a precedent. Right. So there's no law that says that, and the plaintiff did assert that in his complaint as an alternative one of alternative theories, and the Court assumed that for purposes of the ruling in front of us. Your Honor, I don't believe that was the basis of the Court's construction. It may have been simple error. But if you will look back to the Meridian decision, I believe that it is not sufficient at any time for the plaintiff to simply say, I don't agree. The plaintiff has to present facts to suggest that the government's non-certification of an employee is incorrect, and the plaintiff has never done that, asked to do that. It was not a basis for the 56F request, and with all due respect, I think it would be going well beyond the necessary reach of this Court to do that now. Some questions are closed at some point, at least pragmatically. You know, I confess that I'm not familiar with the Meridian case. Did you cite that in your brief? No, because I never thought it would be an issue, Your Honor. I did not. I mean, the finding was — But you're here making it almost a centerpiece of your argument. Your Honor, the reason that I'm pointing it out is that there is ample evidence in the record of plaintiff being on notice throughout the course of the litigation of what the government's position was. It's only a centerpiece of my argument. But there's very little evidence that we're on notice of the argument you're now intending — you're now trying to make. Well, no, Your Honor. I think that if that case means — if that case means what you're advocating — Yes, sir. — then the district court should not have made the assumption that it made, correct? I think it was an error to do so, but I think that an alternative explanation for having done so is at the time of the ruling, the court was trying to construe the complaint as broadly and as favorably as possible to plaintiff. There are so many reasons, and I won't go beyond them because I see the clock is going up now. But if I may just close, Your Honor, by saying I bring this up only to indicate to Judge Gould that it is a basis for not certifying because it is the government's position that it would not resolve the appeals against the United States. And I bring it up in light of his question. Well, of course, it's obvious it will not resolve the appeal if the California Supreme Court comes back on this certified question in favor of the plaintiff because then we get to the question of scope of employment. We know that. That was the reason that I raised it. Yeah, yeah. That was a responsive question, Your Honor. I wasn't trying to blindside anybody. Okay. Thank you. If there are no further questions, then I'll submit. Thank you. Thank you. Thank you. May it please the Court. Briefly, because I don't want to belabor the point, but at footnote 3 of tab 11 on page 5, the Court says that except for purposes of this motion, the government does not The reason why that footnote is in this. I'm sorry. Let me pull up the opinion. Okay. I'm sorry. You're in footnote 3. Tab 11, page 5, footnote 3. Okay. There's a reason why that footnote's there is because, and I'm trying to stay within the record as best I can, but I need to address counsel's contention. I had a phone call with opposing counsel asking him whether or not he would be arguing that course and scope was an issue. And he said for purposes of the motion, we're not going to be arguing that. And I think the Court was advised of that. It's not in the record, so I don't want to go outside the record, but this footnote indicates that that's what happened. That's what happened. There was an agreement amongst counsel that, okay, we're going to address the issues that are in front of the Court. Course and scope is still an issue, but not for purposes of this motion. They weren't disputing it. The government wasn't disputing it. Counsel, how do you respond to the government's argument based on Meridian, which seems to be saying in substance that your client can't argue at this point that the driver was in the scope of employment because of a failure to make administrative challenge earlier? Well, first of all, the government cites no authority for that position. But I think more importantly, just fundamentally, without citations to any authority, to raise that contention, which wasn't raised specifically in the brief and wasn't raised below, and it's something that's outside of the hearing on the summary of judgment motion itself, not put before the Court, and to contend that that somehow bars us now when that argument was never developed, was never made, was never raised, I think is fairly disingenuous, especially when the Court says that for purposes of this motion, the government's not disputing course and scope. So even if that might be the case, for purposes of this motion, course and scope wasn't an issue, and it is an issue in this appeal. Yeah. I don't know that it's disingenuous, but it wasn't raised in the government's brief initially. Right. Correct? Correct. Okay. And briefly, just circling back, AVILA at page 159 specifically says that 831.7, modeled after 846, is exclusively a premises liability statute, exclusively. That's a quote from that AVILA case. And I think in closing, it's important to note we're talking about just in terms of the broad implications of what's going on here. We've got an air traffic controller, a federal employee, ironically, who's riding his bike recreationally. He's in the public forest. This accident happens. If he's in another place, we don't have this result. We've got an immunity statute that the district court acknowledged is generating a very harsh result here. It doesn't. It's a situation where we've got artificial law in this immunity that's preventing compensation to someone who is catastrophically injured, and it doesn't logically make sense. It doesn't logically make sense that this, in this situation, that this immunity would apply to take from this person. We're not talking about someone who's committing a crime on federal land. We're not talking about a young kid doing back flips on his motorcycle. He's riding on a paved road in a national forest. So, I mean, I think that it's important that this Court consider the result. I mean, the result is unjust and it's harsh, and it doesn't make a lot of sense. I've already made my arguments on the statute and on AVILA, and I think that those are compelling as well. I'll submit. If there's questions. Roberts. Thank you very much. Thank you, Your Honor. The case of Kline v. United States is now submitted for decision. We've got one more case on the argument calendar. I'm inclined to take a ten-minute break. Would that be all right with you, Judge Gould?
judges: Noonan, Fletcher, Gould